**Sonali IYENGAR, et al., Plaintiffs,**

**v.**

**Jo Anne B. BARNHART,
et al. Defendants.**

**No. CIV.A.02–0825 ESH.**

United States District Court,
District of Columbia.

Sept. 3, 2003.

Rajiv Santosh Khanna, Gaillard Hunt, Arlington, VA, for Plaintiffs.

Sharad S. Khandelwal, Karen A. Rivera, U.S. Department of Justice, Washington, DC, for Federal Defendant.

### ORDER

HUVELLE, District Judge.

On November 26, 2002, this Court invalidated the Social Security Administration's ("SSA") newly promulgated interpretation of its rules governing the issuance of Social Security Numbers ("SSNs") that precluded such numbers from being assigned "for purposes of obtaining state drivers' licenses." *Iyengar v. Barnhart,* 233 F.Supp.2d 5, 7 (D.D.C.2002). The basis for this decision was that SSA had altered its long-standing interpretation of one its regulations without the benefit of notice and comment, and therefore in violation of the Administrative Procedure Act ("APA"). *See id.* at 13–15. The regulation at issue authorizes the issuance of SSNs to aliens "legally in the United States but not under authority of law permitting him or her to engage in employment, but only for a valid nonwork purpose." 20 C.F.R. § 422.104(a)(3). Before the challenged interpretation was issued, SSA has always understood "nonwork purpose" to include obtaining a driver's license.

SSA responded to this decision by reissuing the interpretive document that the Court had struck down but with one important change: obtaining a driver's license was no longer listed as a invalid nonwork reason for issuing an SSN. *See* RM 00203.510 (Dec.2002). The agency subsequently initiated a formal notice and comment procedure in which it announced its intention to restrict the issuance of SSNs in an effort to prevent fraud. *See* 68 Fed.Reg. 14,563 (March 26, 2003). Under this new rule, which is set to take effect as soon as it is published in the Federal Register, securing a state driver's license will no longer count as a valid nonwork purpose.[1]

On July 18, 2003, Eduardo Ovadia, who was *not* a plaintiff to the original action, filed what he has styled a "Petition for Judgment for Specific Acts and Issuance of Contempt Citations Against Defendants." Petitioner is a Mexican citizen living in Mexico who is seeking to renew his Washington State dental license. The State has refused to do so because Mr. Ovadia does not have a SSN; his attempts to obtain a number from SSA have failed because the agency (based on its reissued RM 00203.510) does not consider securing a state professional license to be a valid nonwork purpose. In his petition, Mr. Ovadia asserts that SSA's refusal to issue him an SSN for this purpose violates this Court's November 26, 2002 Order, and he therefore seeks to have the agency held in contempt and to have the new version of RM 00203.510 invalidated.

This petition must be denied. The Court's original Memorandum Opinion in this case was directed solely at action that SSA had taken with respect to aliens seeking SSNs for the purpose of obtaining state drivers' licenses. This is clear from each portion of that Opinion. Thus, the "Statutory and Regulatory Background" section described the agency's history of

---

1. Specifically, the agency's notice reads as follows: "We also propose to clarify our rules regarding when we will assign an SSN to an alien not under authority of law permitting him or her to work in the U.S. We are proposing to define a 'valid nonwork purpose' as those instances when a Federal statute or regulation requires an alien to have an SSN in order to receive a federally-funded benefit to which the alien has established entitlement, or when a State or local law requires an alien who is legally in the U.S. to have an SSN in order to receive general public assistance benefits (i.e., a public benefit that is means-tested) to which the alien has established entitlement." 68 Fed.Reg. at 14,563.

granting SSNs in order to allow aliens to qualify for drivers' licenses. 233 F.Supp.2d at 7–8. The "Factual Background" section described the requirements in Alabama and Illinois (the two states in which all of the original named plaintiffs resided) for obtaining such licenses. *Id.* at 8–9. The Court's analysis of the plaintiffs' standing to sue was based on Alabama's policy for ensuring that its drivers' license applicants had SSNs. *Id.* at 9–13. And, most importantly, the Court's APA holding was based entirely on the fact that SSA's new interpretation represented a reversal of "at least 20 years of 'administrative common law' permitting aliens *to obtain SSNs in order to get state driver's licenses.*" *Id.* at 15 (emphasis added) (quoting *Alaska Prof'l Hunters v. FAA,* 177 F.3d 1030, 1035 (D.C.Cir.1999)). Against this drumbeat of references to state drivers' licenses stands a total silence with respect to any other kind of license. There was no discussion of SSA's historical practice with respect to such state professional licenses. Nor did anything in the Court's Opinion address whether SSA violated (or would have violated) the APA by refusing to issue SSNs for such licenses (or indeed any state benefit other than a driver's license).

This narrow focus was necessitated by the nature of the case that was before the Court. None of the named plaintiffs in the underlying litigation was seeking an SSN in order to obtain a professional license; they were all concerned solely with securing drivers' licensees in the states in which they resided.[2] (Am.Compl.¶¶ 12–13.) Moreover, the relief sought with respect to the APA notice and comment count on which the Court ultimately ruled in plaintiffs' favor (Count II) was couched specifically in terms of drivers' licenses: "WHEREFORE plaintiffs ask for an order requiring defendants to rescind the policy in RM 00203.510 and to circulate an order to all Social Security offices that aliens on non-working visas may obtain Social Security numbers, and that a desire to obtain a driver's license is among the legitimate reasons for seeking a Social Security number." (Am.Compl.¶ 18.)

As such, it is clear that the injunction issued by the Court in this case was limited to restricting SSA from changing its long-standing practice of issuing SSNs to aliens so that they could obtain drivers' licenses, at least in the absence of notice and comment rulemaking. The Court was not asked to, and did not intend to, expand that prohibition to state professional licenses. Therefore, the agency's decision

**2.** It is true that in support of their Motion for a Preliminary Injunction, plaintiffs did submit an declaration from one Bindu Sundar, who suggested that she needed an SSN in order to be licensed as a physical therapist in California. However, Ms. Sundar was not a named plaintiff in the action, and her declaration appears to have been offered merely for illustrative purposes. In addition, while plaintiffs did seek to certify a class that would have included all aliens in the United States "on visas that do not entitle them to work and [who] do no have and have been refused Social Security numbers" (Am.Compl.¶ 20), that proposed class was never certified. Instead, the Motion for Class Certification was denied as moot in light of the Court's decision

granting summary judgment on plaintiffs' APA claim, *see Iyengar,* 233 F.Supp.2d at 16, and plaintiffs have neither sought reconsideration of, nor appealed, that ruling. As such, the only relevant class of aliens at the time that the Court issued its original opinion were *those who sought SSNs in order to qualify* for state drivers' licenses. In other words, the Court's Order was made only "in favor" of such persons, and it is therefore only such persons who have the right to enforce obedience to that order. *See* FED. R. CIV. P. 71 ("When an order is made in favor of a person who is not a party to the action, that party may enforce obedience to the order by the same process as if a party.").

to reissue RM 00203.510 with the restrictions on giving out SSNs for such licenses still in place was not a violation of the Court's November 26, 2002 Order and does not warrant contempt sanctions. Nor does that Order entitle petitioner to the prospective relief that he seeks. In short, therefore, petitioner lacks standing to enforce the injunctive order previous issued by this Court.

Accordingly, it is hereby

**ORDERED** that petitioner Eduardo Ovadia's Petition for Judgment for Specific Acts and Issuance of Contempt Citations Against Defendants [40–1 and 40–2] is **DENIED.**

**IT IS SO ORDERED.**